UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE E. CARRASCO,

Plaintiff,

-v-

CHRISTOPHER MILLER, *Superintendent of Great Meadow Correctional Facility*,

Defendant.

17 Civ. 7434 (JPC)

ORDER

JOHN P. CRONAN, United States District Judge:

Petitioner Jose E. Carrasco, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising several claims related to his conviction in New York state court of murder in the second degree, in violation of N.Y. Penal Law § 125.25[1], and robbery in the first degree, in violation of N.Y. Penal Law § 160.15[1]. Dkt. 2 (“Petition”) at 1; Dkt. 42 ¶ 6. The Petition was referred to the Honorable Barbara Moses for a Report and Recommendation, Dkt. 9, and on November 13, 2021, Judge Moses recommended that the Court deny the Petition in its entirety, Dkt. 59 (“R&R”). The Court then permitted Carrasco two extensions of time to file objections to the Report and Recommendation. *See* Dkts. 62, 66. Now before the Court are those objections, which were docketed on February 12, 2021. Dkt. 69 (“Objections”). For the reasons stated below, the Court adopts the Report and Recommendation in its entirety.

## I. Legal Standard

A district court “may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge” in a Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). Within fourteen days after a party has been served with a copy of a magistrate

judge's report and recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). If a party submits a timely objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section. Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

"The objections of *pro se* parties are 'generally accorded leniency and should be construed to raise the strongest arguments that they suggest.'" *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (quoting *Howell v. Port Chester Police Station*, No. 09 Civ. 1651 (CS) (LMS), 2010 WL 930981, at *1 (S.D.N.Y. Mar. 15, 2010)). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Id.* (quoting *Howell*, 2010 WL 930981, at *1).

## II. Discussion

Carrasco raises several objections. The Court assumes the parties' familiarity with the facts and procedure of this case, and therefore proceeds to address Carrasco's objections on the merits.

First, Carrasco objects to Judge Moses's recommendation that his so-called "repugnancy" challenge to the verdict be rejected, arguing that his claim that his conviction for intentional murder was inconsistent with and repugnant to his acquittal for murder in the first degree and felony murder. *See* Objections at 3. But "[h]abeas corpus review is limited to violations of federally protected rights," and because "[f]ederal law does not protect a state criminal defendant against inconsistent verdicts, . . . it is well settled that 'inconsistent jury verdicts are not a ground for

habeas relief.'"  *Polk v. Annucci*, No. 15 Civ. 4979 (VSB) (HBP), 2018 WL 6003976, at *9 (S.D.N.Y. Mar. 27, 2018) (quoting *Cater v. Chappius*, 12 Civ. 00171 (JKS), 2013 WL 6579055 at *7 (N.D.N.Y. Dec. 13, 2013)), *report and recommendation adopted*, No. 2018 WL 5999606 (S.D.N.Y. Nov. 15, 2018); *see Harris v. Rivera*, 454 U.S. 339, 445 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."). As the Supreme Court in *United States v. Powell* explained,

> where truly inconsistent verdicts have been reached, the most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. . . .  It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense.

469 U.S. 57, 58, 64–65 (1984) (internal quotations and citation omitted).  As such, Judge Moses correctly concluded that Carrasco does not have a cognizable habeas claim in this respect.

Second, Carrasco argues that Judge Moses incorrectly decided his two Fourth Amendment claims.  Specifically, he argues that the officers' entrance into his home was improper, since the co-habitant, Jeanette Diaz, who gave the officers permission to enter "had no license to occupy [his] private bedroom and no ownership rights to any of the property illegally seized," and Ms. Diaz acted under the threat of deportation.  Objections at 5-6.  In addition, he argues that his arrest was not based on probable cause.  *Id.* at 6-7.

As a preliminary matter, and as Judge Moses noted, *see* R&R at 32, it is well-settled that a petitioner cannot obtain habeas relief for an alleged Fourth Amendment violation "unless he was denied 'an opportunity for full and fair litigation' of the claim in the state courts.'"  *Applewhite v. McGinnis*, No. 04 Civ. 6153 (PKC), 2006 WL 1317016, at *2 (S.D.N.Y. May 15, 2006) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1967)).  "[F]ederal courts have approved New York's

procedure for litigating Fourth Amendment claims—a process embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.*—as being facially adequate," and "[t]herefore, 'federal scrutiny of [a petitioner's] Fourth Amendment claim[ ] is not warranted unless he demonstrates that he was in fact precluded from utilizing [that procedure] by an unconscionable breakdown in the review process.'" *Valtin v. Hollins*, 248 F. Supp. 2d 311, 317 (S.D.N.Y. 2003) (citations omitted) (quoting *Shaw v. Scully*, 654 F. Supp. 859, 863-64 (S.D.N.Y. 1987)). Simply put, Justice Foley's six-day pretrial suppression hearing and subsequent state review most certainly do not reflect an unconscionable breakdown in the review process. R&R at 4-8.

Moreover, under the deferential standard required by Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court can grant habeas relief only when the state court's opinion resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings." 28 U.S.C. § 2254(d). As Justice Foley outlined in her opinion, police officers do not need a search warrant to conduct a lawful search if they have consent to search, so long as the person giving consent has the requisite authority to do so. Dkt. 42-2 at 7. However, a search is permissible even if the person did not have *actual* authority to consent, so long as the officers "rely in good faith" on the *apparent* authority of an individual and "the circumstances reasonabl[y] indicate that the individual does, in fact, have the authority to consent." *Id.*; *see also Illinois v. Rodriguez*, 497 U.S. 177, 178 (1990) (affirming that a search is permissible if the officers reasonably believed that an individual had authority to give consent to the search); *People v. Gonzalez*, 88 N.Y.2d 289, 295 (1996) (same).

Here, Justice Foley concluded that Ms. Diaz "possessed the requisite apparent authority and control to allow the officers into the bedroom and give over the plastic bag containing the sneakers and sweatshirt." Dkt. 42-2 at 7. Justice Foley noted that Carrasco's mother originally permitted the officers to enter the apartment, before then leaving the officers in the apartment with Ms. Diaz, the common-law wife of Carrasco's brother and also a resident of the apartment. *Id.* at 2, 8. After being asked what Carrasco had been wearing the day prior, Ms. Diaz retrieved from the bedroom a small plastic bag with Carrasco's clothing. *Id.* at 2-3. One of the officers asked Ms. Diaz if he could have the sneakers in that bag—which were potentially significant given a bloody footprint at the murder scene—and Ms. Diaz agreed to turn over the property and signed a consent form. Ms. Diaz then invited the officers to inspect the bedroom, and the officers removed a knife that was visible on the floor. *Id.* at 3. Testimony at the suppression hearing established that this bedroom was shared by Carrasco, his mother, his brother, and sometimes Ms. Diaz, and the room was not locked because it was shared by multiple individuals. *Id.* at 5.

Justice Foley concluded that because the bedroom was occupied by not only Carrasco, but also by his mother, brother, and occasionally Ms. Diaz, Carrasco did not have a reasonable expectation of privacy in that space. *Id.* at 8. She also concluded that he did not have a reasonable expectation of privacy in the plastic bag, given that it was not a "closed object inside the home" like a sealed duffel bag, which would not have been within the scope of Ms. Diaz's consent. *Id.*

There is no reason to doubt this decision or the Appellate Division's subsequent conclusion that the "evidence recovered from [Carrasco's] apartment was obtained through the valid consent of a co-occupant with authority over the places where the property was found, or was voluntarily given to the police by a civilian who was not acting as a police agent." *People v. Carrasco*, 1 N.Y.S.3d 69 (2015) (citations omitted). It is not on this Court to second guess the state court's

credibility determinations and ultimate conclusion that the co-occupant had apparent authority over the property and was not acting under duress.  Nor is there reason to doubt the state court's conclusion that there was probable cause for Carrasco's arrest, which was based not only on the anonymous tip but also the other physical evidence found at his apartment, which as noted above, was properly obtained.  *See* Dkt. 42-2 at 9-10.

Third, Carrasco contests Judge Moses's determination that he failed to meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) to establish ineffective assistance of counsel.  At bottom, he appears to argue that Judge Moses's recommendation on this issue is flawed because his state appellate counsel was ineffective, but cites only that the arguments counsel made were unsuccessful.  *See* Objections at 7-9.  Although courts generally conclude that "conclusive" or "general objections" give rise to only clear error review, *see Brown v. Peters*, No. 95 Civ. 1641 (RSP) (DS), 1997 WL 599355, at *2 (N.D.N.Y. Sept. 22, 1997) (collecting cases), *aff'd*, 175 F.3d 1007 (2d Cir. 1999), Carrasco's argument fails under any standard.  In evaluating a claim of ineffective assistance, "true ineffectiveness" should not be confused "with losing trial tactics or unsuccessful attempts to advance the best possible defense," as "[t]he Constitution guarantees a defendant a fair trial, not a perfect one."  *Henry v. Poole*, 409 F.3d 48, 58 (2d Cir. 2005) (quoting *People v. Henry*, 95 N.Y.2d 563, 566 (2000)).  And while Carrasco does not address any of the specific factual conclusions that Judge Moses made regarding his appellate counsel's performance, *see* R&R at 34-43, the Court has reviewed Judge Moses's analysis of counsel's performance and the ineffective assistance claim, along with the relevant parts of the record, and the Court agrees that appellate counsel's performance was not deficient and did not prejudice the defense.  *Strickland*, 466 U.S. at 687.

Fourth, Carrasco contends that Judge Moses incorrectly recommended that his Confrontation Clause claim "should be rejected because the Supreme Court has not squar[e]ly addressed the sufficiency of an analyst's testimony under the specific circumstances here." Objections at 9. As an initial matter, Carrasco does not object to Judge Moses's determination that he procedurally defaulted on this claim by failing to argue it in his leave application to the Court of Appeals. R&R at 28-29. This alone bars consideration of Carrasco's claim, as he has not shown "cause" for his failure to raise the claim and "prejudice" resulting from the alleged constitutional violation. *See id.* at 26.

Regardless, the state court's decision "was not contrary to or an unreasonable application of clearly established law." 28 U.S.C. § 2254(d). "A principle is 'clearly established Federal law' for § 2254(d)(1) purposes 'only when it is embodied in a [Supreme Court] holding,' framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (citation and internal quotation marks omitted). "An unreasonable application occurs when 'the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case,'" *id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)), "so that 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,'" *id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Carrasco is correct that in *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause prohibits the admission of out-of-court "testimonial statements" at a criminal trial unless the person making those statements is unavailable and there was a prior opportunity for cross-examination. 541 U.S. 36, 68 (2004). However, it declined to articulate a precise definition of what it means for a statement to be "testimonial," *id.*, and has since clarified that "a statement cannot fall within the Confrontation Clause unless its *primary purpose* was testimonial," *i.e.*, that it was for the primary purpose of "creat[ing] an out-of-court substitute for trial testimony," *Ohio v. Clark*, 576 U.S. 237, 237 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). In *Bullcoming v. New Mexico*, also cited by Carrasco, the Supreme Court held that it was a violation of the Confrontation Clause to admit as evidence a lab report certifying that the defendant's blood-alcohol concentration was above the threshold for aggravated DWI, without requiring the testimony or unavailability of the analyst who made the certification. 564 U.S. 647, 651-52 (2011). The Court found that the report was "testimonial" as it was "formalized in a signed document" and certified by the analyst. *Id.* at 665.

Nonetheless, contrary to Carrasco's assertion, "the Supreme Court has never held that the Confrontation Clause requires an opportunity to cross examine each lab analyst involved in the process of generating a DNA profile and comparing it with another, nor has it held that uncertified, unsworn notations of the sort at issue here are testimonial." *Washington*, 876 F.3d at 407. Therefore, the Second Circuit has concluded that it is not contrary to clearly established Supreme Court law to admit an OCME case file about DNA testing without the testimony of each analyst involved in the process. *See id.* In light of this precedent, the Court cannot say that the state court's decision to admit the report here, even without the testimony of the analyst who conducted some of the underlying tests, applied the law in a way that contravenes Supreme Court case law.

Nor can the Court conclude that the state faced "materially indistinguishable facts" from a Supreme Court case and arrived at a different result, or made a decision "so lacking in justification" that there is no room for "fairminded disagreement." *Harrington*, 562 U.S. at 103.

Finally, the Court recognizes Carrasco's contention that he suffers from several health conditions, some of which appear to be long-term conditions and others that he states have developed only recently. *See* Objections at 1-2; Dkt. 65. In part because of these conditions, the Court allowed Carrasco significant extra time to submit his objections. *See* Dkts. 62, 66; *see also* Dkt. 68. But while the Court sympathizes with Carrasco, his health conditions do not excuse the fact that he has failed to raise any meritorious claims or objections. In an abundance of caution, however, the Court has conducted a *de novo* review of the Report and Recommendation in its entirety, including those portions to which Carrasco did not object, and finds it to be well reasoned and its conclusions well founded.

**III. Conclusion**

Accordingly, for the reasons set forth above, the Court adopts the Report and Recommendation in its entirety. The Clerk of the Court is respectfully directed to mail a copy of this Order to Petitioner Jose Carrasco and close this case.

SO ORDERED.

Dated: March 18, 2021
New York, New York

JOHN P. CRONAN
United States District Judge